UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | |
| v. | CAUSE NO.: 1:15-CR-1-TLS-SLC-1 |
| EDUARDO MARTINEZ, | |
| Defendant. | |

**AMENDED OPINION AND ORDER[1]**

This matter is before the Court on Defendant Eduardo Martinez's Motion under 28
U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody [ECF
No. 308], filed by the Defendant on June 30, 2018, and on the Defendant's Motion to Hold in
Abeyance a Motion to Vacate Sentence Filed Under 28 U.S.C. § 2255 [ECF No. 318], filed by
the Defendant on December 10, 2018. The Defendant seeks to have his sentence vacated and a
notice of appeal filed because his trial counsel provided ineffective assistance. For the reasons
set forth below, the Court DENIES the Defendant's § 2255 Motion.

**BACKGROUND**

On January 14, 2015, the Defendant was indicted for one count of conspiracy to
distribute and possess with intent to distribute 1 kilogram or more of heroin in violation of 21
U.S.C. § 846, one count of possession with intent to distribute 1 kilogram or more of heroin in
violation of 21 U.S.C. § 841(a)(1), one count of leasing a residence for the purpose of

---

[1] This Court's July 26, 2022 Opinion and Order [ECF No. 370] is amended solely to show that the
Court's original ruling was also on the additional bases for relief under 28 U.S.C. § 2255 set forth in the
Defendant's Motion to Hold in Abeyance a Motion to Vacate Sentence Filed Under 28 U.S.C. § 2255
[ECF No. 318].

distributing a controlled substance in violation of 21 U.S.C. § 856(a)(1), four counts of distributing 50 grams or more of methamphetamine in violation of 21 U.S.C. § 841(a)(1), and one count of unlawful possession of a firearm in violation of 18 U.S.C. § 922(g)(5). Indictment 1–8, ECF No. 55. On February 17, 2017, the Defendant pled guilty as part of a plea agreement to one count of possession with intent to distribute 1 kilogram or more of heroin in violation of 21 U.S.C. § 841(a)(1), one count of distributing 50 grams or more of methamphetamine in violation of 21 U.S.C. § 841(a)(1), and one count of illegally possessing a firearm in violation of 18 U.S.C. § 922(g)(5). Order Accepting Findings and Recommendation, ECF No. 229. The Defendant's plea agreement included a waiver of his right to appeal. Plea Agreement ¶¶ 5–6, ECF No. 220.

The probation office submitted a final Presentence Report (PSIR) on April 27, 2017, along with an addendum indicating that the parties had no objections. ECF Nos. 240, 241. According to the PSIR, on October 24, 2013, the Defendant sold two firearms to an informant in a controlled buy; these firearms were an AK-47 style rifle and a Tec-9 style gun. On February 11 and April 1, 2014, the Defendant sold the informant a handgun. In a wiretap authorized on December 15, 2014, the Defendant was overheard coordinating "some gun transactions." Specifically, on November 19 and November 23, 2014, the Defendant's conversations involved suspected gun transactions. When the Defendant's house was searched, an AK-47 style rifle, a shotgun with a pistol grip, and a stolen handgun were recovered. The Defendant told the probation officer that he became a drug dealer because "he needed more money to support his family." The PSIR noted that the Defendant's wife was not aware of the scope or extent of the Defendant's activity, but that she assisted by accepting payments on his behalf without knowing the individuals whose bank accounts she deposited money into.

The PSIR grouped the Defendant's three counts together, basing the offense level on the two drug trafficking counts. The Defendant received a two-level enhancement under U.S.S.G. § 2D1.1(b)(1) for possessing a dangerous weapon. He also received a two-level enhancement under U.S.S.G. § 3B1.1 for either using "affection" to "involve another individual in the illegal purchase, sale, transport, or storage" of the drugs when that individual "received little or no compensation" and "had minimal knowledge of the scope and structure of the enterprise" or because the Defendant's offense was "part of a pattern of criminal conduct engaged in as a livelihood." U.S.S.G. § 2D1.1(b)(15). The Defendant's total offense level was 41. The Defendant's sentencing guideline range was 324 months to 405 months, with a 120-month maximum for the illegal alien in possession of a firearm count.

On November 20, 2017, the Court sentenced the Defendant to 324 months for each of the two violations of § 841(a)(1) and 120 months for his violation of § 922(g)(5), all to be served concurrently. ECF No. 301. At the sentencing hearing, the Defendant's counsel did not make any legal or factual objections to the PSIR. *See* Sent. Tr. 6:10, ECF No. 313. The Court stated that "to the extent that there is a subsequent . . . objection with regard to the guideline calculations, . . . the Court would impose the same sentence, if any such dispute that's now raised might have been resolved differently." *Id.* at 36. The Court reminded the Defendant's trial counsel of his "duty to perfect a timely appeal of this sentence, should your client wish to do so." *Id.* at 42:23–25. No notice of appeal was filed by the Defendant's trial counsel on behalf of the Defendant.

On July 30, 2018, the Defendant, pro se, filed the instant motion under 28 U.S.C. § 2255 [ECF No. 308]. On December 10, 2018, the Defendant, pro se, filed a second motion to assert additional bases for relief under 28 U.S.C. § 2255 [ECF No. 318]. The Defendant has since been appointed counsel. ECF Nos. 335, 336, 342. On August 19, 2020, the Court held a telephonic

3

status conference where the parties requested an evidentiary hearing. ECF No. 340. On November 16, 2021, the Court held the evidentiary hearing. ECF No. 364. The parties filed post-hearing briefs. ECF Nos. 352, 357.

At the hearing the Court heard testimony from six witnesses. Hr. Tr. 2, ECF No. 368. The Defendant had interpreters at the hearing to translate English into Spanish, and Spanish into English. *Id.* at 3:22–4:3. The Defendant agreed to testify by video. *Id.* at 6:18–7:19.

The Defendant testified that he was concerned with the two-level enhancement for possessing a weapon. *Id.* at 15:15–15:24. He had sent a letter to his trial counsel asking that his trial counsel come to the jail and clarify his concerns with his base offense level and enhancements. *Id.* at 15:7–14. The Defendant testified that his trial counsel visited the jail and told him that he would file objections, but that he never did. *Id.* at 16:24–17:3.

The Defendant testified that, at the sentencing hearing, his counsel "didn't object to anything." *Id.* at 20:6–8. The Defendant admitted that at the sentencing hearing, he did not ask his trial counsel to file a notice of appeal. *Id.* at 20:9–10. The Defendant testified that he attempted to call his counsel from jail the day of his sentencing to have a notice of appeal filed but was unable to do so because there were issues with the phones. *Id.* at 20:11–19. The Defendant testified in relation to Government Exhibit No. 5, which is a translated written description made by a prison employee of the phone calls between the Defendant and his wife. *See id.* at 21:5–18. The Defendant testified that two days after his sentencing he spoke with his wife in Spanish and asked her to call his trial counsel to direct him to file a notice of appeal. *Id.* at 20:24–22:18. He testified that on a phone call later, call number 5, his wife told him that his attorney would file an appeal. *Id.* at 22:19–23:18. In call number 7, the Defendant talked with his

4

wife about how he had fourteen days to file an appeal. *Id.* at 22:8–23:5. In call number 10, the Defendant and his wife again talked about the appeal. *Id.* at 25:6–20.

The Defendant testified that he "was under the impression that my attorney had filed an appeal, a notice of appeal" "because my wife told me she had called him." *Id.* at 25:2–26:5. The Defendant admitted that he did not call his trial counsel because he thought his wife had called him. *Id.* at 26:3–12. Under cross-examination, the Defendant re-affirmed that he had no contact with his trial counsel because he thought that his wife had asked his trial counsel. *Id.* at 28:13–17. He also admitted that he never sent his trial counsel a letter asking for him to file a notice of appeal, even though he had mailed a letter to his trial counsel before. *Id.* at 29:8–13.

The Defendant testified that, at the time he was arrested and charged in this case, he "did have a job, but [he] was off" because he "was recuperating from surgery." *Id.* at 29:19–22. He testified that he did not tell the probation office that he quit his job because he was not making enough money. *Id.* at 29:23–30:3.

The Defendant's wife testified that she made three calls to the Defendant's trial counsel's office. *Id.* at 42:22–23. She testified that, in the first phone call, she talked with the Defendant's trial counsel directly and that he told her that he did not think that anything could be done for the appeal but he would go to the jail to visit the Defendant and talk with him. *Id.* at 42:24–43:17. She testified that this call was a couple of days after the Defendant's sentencing. *Id.* at 43:18–23. After that conversation, she called the Defendant's trial counsel two more times, once leaving her number with his secretary and once having his secretary put her through to his voicemail. *Id.* at 43:24–44:4. The Defendant's wife testified that the Defendant's trial counsel later told her that he was doing everything he could for the Defendant, but that if he filed an appeal, it would be thrown out. *Id.* at 44:5–11.

The Defendant's wife was shown her cellphone records from August 28, 2017, through December 13, 2017, and she noted that her records did not indicate any call between her and the Defendant's trial counsel's phone number within fourteen days of the Defendant's sentencing. *Id.* at 45:15–46:8. She testified that she had another cell phone but did not remember the number and that she may have made calls from the halfway house where she was living. *Id.* at 46:916. She testified that the halfway house recorded her calls. *Id.* at 46:16–20. She testified that she did not remember which phone she used to call the Defendant's trial counsel, but that she did speak with him. *Id.* at 47:14–22.

On cross-examination, the Defendant's wife testified that she remembered that she made phone calls "under my sister's number" in addition to her primary number. *Id.* at 48:19–22. When shown Government's Exhibit No. 2, the Defendant's phone records from jail, she testified that she used her primary phone number to call the Defendant in jail. *Id.* at 51:3–52:10. She also admitted that she was a drug addict at the time. *Id.* at 49:22–51:2. The Defendant's wife had also been convicted of a crime of dishonesty in 2006 in Indiana. *Id.* at 52:11–53:5. As a result of the investigation that led to the Defendant's conviction in this case, his wife pled guilty to money laundering. *Id.* at 34:25–35:11.

At the hearing, the Government called Jeff Kroemer, an employee at the Allen County Sherriff's Department, who keeps and accesses the records of jail phone calls. *Id.* at 54:15–55:3. He verified that Government's Exhibit No. 2, a record of the Defendant's phone calls from jail, did not show that the Defendant made any phone calls to the phone number of the Defendant's counsel. *Id.* at 56:17–57:13. Although there were dialed phone calls without a number recorded, Kroemer testified that those blank entries were caused when an inmate attempts to connect to the system or attempts to dial a phone number. *Id.* at 57:19–58:2. He testified that when a call is

completed, there will not be a blank. *Id.* at 58:3–5. Kroemer also looked at Government's Exhibit No. 3, which showed all the phone calls made by inmates from the jail to the Defendant's trial counsel's phone number. *Id.* at 58:18–59:8. There were 29 calls made, none with the Defendant's number. *Id.* at 59:9–22.

The Government also called Steven Espinoza, who speaks Spanish and listened to the recordings of the phone calls between the Defendant and the Defendant's wife made at the relevant time while the Defendant was in jail. *Id.* at 64:5–65:17. He verified that Government's Exhibit No. 5 was a copy of his handwritten notes of those phone calls. *Id.* at 67:5–11. He testified that he never heard the Defendant direct anyone to file a notice of appeal, and that the Defendant's wife, not his trial counsel, was the one who said that the Defendant could appeal his sentence. *Id.* at 67:16–68:23.

The Government also called the Defendant's trial counsel to testify. *Id.* at 77:22–25. He testified that "the main part of my profession has been criminal defense." *Id.* at 73:11–12. The Defendant's counsel testified that he now practices part time because he has health issues that physically prevented him from practicing full time. *Id.* at 76:19–77:13. He is an active member of the Indiana bar in good standing, and he has never been disciplined. *Id.* at 77:14–21. He testified that he told the Defendant that the Defendant could call or write him if he needed to get in contact; he testified that his policy was to always accept phone calls from the jail. *Id.* at 79:9–14.

The Defendant's counsel verified that he provided copies of the correspondence between himself and the Defendant to the Government, which was admitted as Government's Exhibit No. 6. *Id.* at 80:2–11. His policy was to have his paralegal transfer phone calls to him or to his voicemail. *Id.* at 83:2–5. However, he did not keep records of all the phone calls he had with

clients. *See id.* at 83:6–22. The Defendant's trial counsel testified that he was never contacted by the Defendant after he was sentenced. *Id.* at 90:17–22. He testified that he would have filed the notice of appeal if asked, even if the Defendant had waived his right to appeal. *Id.* at 90:23–91:9. He also testified that after the Defendant's conviction, he did not receive phone calls or letters from the Defendant's wife. *Id.* at 91:20–92:2.

The Government's final witness, and the final witness called at the hearing, was Peter Mooney of the Fort Wayne Police Department, the main case agent on the Defendant's case. *Id.* at 113:24–114:18. He subpoenaed the Defendant's wife's phone carrier for her phone records from 2017. *Id.* at 115:12–23. He testified that the Defendant's wife's phone records from 2017, Government Exhibit No. 8, were extensive and comprised of 1,292 pages. *Id.* at 115:24–116:14. Mooney testified that he thought that this was the Defendant's wife primary phone because "[t]here are a lot of calls." *Id.* at 116:15–19. He also testified that Government's Exhibit No. 10, Interpreting Call Detail Records, showed that the Defendant's wife never called the Defendant's trial counsel's number during 2017. *Id.* at 117:23–118:4.

## ANAYLSIS

Under 28 U.S.C. § 2255(a), a prisoner convicted of a federal crime may move the sentencing court to vacate, set aside, or correct a sentence "upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a). "Motions to vacate a conviction or sentence ask the district court to grant an extraordinary remedy to one who already has had an opportunity for full process." *Kafo v. United States*, 467 F.3d 1063, 1068 (7th Cir. 2006). Generally, § 2255 petitioners "may not raise any issue that they might have presented

on direct appeal." *Cross v. United States*, 892 F.3d 288, 294 (7th Cir. 2018) (citing *McCoy v. United States*, 815 F.3d 292, 295 (7th Cir. 2016)). However, an exception to this procedural bar is that ineffective assistance of counsel claims may always be raised under § 2255. *Massaro v. United States*, 538 U.S. 500, 504 (2003); *see Ramirez v. United States*, 799 F.3d 845, 852–53 (7th Cir. 2015).

The Defendant's § 2255 Motion presents several grounds for relief alleging ineffective assistance of counsel. A defendant claiming ineffective assistance must show that his "'counsel's performance was deficient' and 'the deficient performance prejudiced the defense.'" *Bridges v. United States*, 991 F.3d 793, 803 (7th Cir. 2021) (quoting *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). This requires the defendant to show "(1) that his trial attorney's performance fell below an objective standard of reasonableness, and (2) that he suffered prejudice as a result." *Edmond v. United States*, 899 F.3d 446, 452 (7th Cir. 2018) (citing *Strickland*, 466 U.S. at 687–96). To show that an attorney's performance fell below an objective standard of reasonableness, the defendant must identify "specific acts or omissions by his counsel" that form the basis of his ineffective assistance claim. *Blake v. United States*, 723 F.3d 870, 879 (7th Cir. 2013) (citing *Wyatt v. United States*, 574 F.3d 455, 457 (7th Cir. 2009)). Further, a defendant attempting to establish that he has been prejudiced "must show 'that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Bridges*, 991 F.3d at 808 (quoting *Strickland*, 466 U.S. at 694). Indeed, "[b]ald allegations of prejudice are insufficient to demonstrate ineffective assistance of counsel." *United States v. Redd*, No. 1:03-CR-53, 2007 WL 1724900, at *8 (N.D. Ind. June 11, 2007) (citing *Barkauskas v. Lane*, 946 F.2d 1292, 1295 (7th Cir. 1991)). If a defendant cannot establish one of the *Strickland*

prongs, the Court need not consider the other. *Groves v. United States*, 755 F.3d 588, 591 (7th Cir. 2014).

### A.     Failure to File a Notice of Appeal

The *Strickland* test applies to counsel's failure to file a notice of appeal. Counsel acts in an objectively unreasonable manner when counsel "disregards specific instructions from the defendant to file a notice of appeal." *Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000). The filing of a notice of appeal is a "purely ministerial task" rather than a "strategic decision." *Id.*

> [C]ounsel has a constitutionally imposed duty to consult with the defendant about an appeal when there is reason to think either (1) that a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing.

*Id.* at 480. Under the second part of the *Strickland* test, which requires the defendant to show prejudice, the strong presumption of reliability applied to judicial proceedings does not apply to this error because it deprives the defendant of his right to appeal. *Id.* at 481–83. "[W]hen counsel's constitutionally deficient performance deprives a defendant of an appeal that he otherwise would have taken, the defendant has made out a successful ineffective assistance of counsel claim entitling him to an appeal" and the court is to "presume[e] prejudice with no further showing from the defendant of the merits of his underlying claim." *Id.* at 484. "[E]vidence that there were nonfrivolous grounds for appeal or that the defendant in question promptly expressed a desire to appeal will often be highly relevant" to the prejudice inquiry. *Id.* at 485.

The presumption of prejudice applies even when the defendant has waived his right to appeal through his plea agreement. In *Garza v. Idaho*, the Supreme Court held that the failure to file a notice of appeal is erroneous even if the defendant waived his right to appeal in a plea

agreement. 139 S. Ct. 738, 747 (2019). In *Garza*, the defendant specifically instructed his defense counsel to file a notice of appeal, but his defense counsel did not file a notice of appeal because the defendant had waived his right to appeal. *Id.* at 743. The defendant's right to appeal remains even when the defendant has signed a waiver of his appellate rights as part of his plea agreement. *Id.* at 748. The waiver of appeal, rather than eliminating the defendant's right to appeal, simply gives the defendant "fewer possible claims than some other appellants." *Id.* Therefore, the presumption of prejudice applies despite the waiver. *Id.* at 749. Notably, the Supreme Court's ruling in *Garza* overrules previous Seventh Circuit case law that held that a waiver of appeal rights in a plea agreement meant that the defendant did not suffer prejudice if no notice of appeal was filed. *See Nunez v. United States*, 546 F.3d 450, 455–56 (7th Cir. 2008), *abrogated by Garza*, 139 S. Ct. 738.

In this case, there is no dispute as to the law that applies. Both parties admit that no notice of appeal was filed. The Defendant's only allegation as to this claim is that his trial counsel failed to file a notice of appeal that he requested through his wife. The Court held a hearing to determine whether the Defendant requested that his trial counsel file a notice of appeal. The Defendant failed to prove that he asked his attorney to file a notice of appeal. The Defendant does not argue that his counsel failed to inform him of his right to appeal. The Defendant admitted that he never directly asked his trial counsel to file a notice of appeal.

The Defendant alleges that he believed that his wife told his trial counsel to file a notice of appeal. The Court finds that the Defendant's wife did not ask the Defendant's trial counsel to file a notice of appeal during the fourteen days in which the Defendant had a right to appeal. The only evidence that the Defendant's wife asked the Defendant's trial counsel to file a notice of appeal is her testimony. However, her testimony is not credible, and it contradicts the evidence

presented in this case. Her phone records do not show her calling the Defendant's trial counsel during the fourteen-day day period. The Defendant's trial counsel testified that he did not have any contact with the Defendant's wife after the Defendant was sentenced. There is evidence, from the phone calls between the Defendant and his wife, that the Defendant's wife discussed appealing the Defendant's conviction with the Defendant. But the only evidence that the Defendant's wife directed the Defendant's trial counsel to file a notice of appeal is her testimony at the hearing. Although the Defendant's wife testified that she had a second cell phone and had access to phones at the halfway house, she does not recall which phone she used to contact the Defendant's trial counsel. She testified that she regularly contacted the Defendant's counsel, but he did not recall her calling him and her phone records did not show any calls made to him. She gave contradictory testimony about whether she recalled her secondary phone number, or whether it was her sister's phone. No evidence was presented by the Defendant that his wife contacted the Defendant's trial counsel other than her testimony. The Defendant's wife is a convicted felon who was addicted to drugs at the time that the Defendant would have been able to request that his trial counsel file a notice of appeal.

The Defendant never requested, either on his own or through his wife, that his trial counsel file a notice of appeal. The Defendant's counsel's failure to file a notice of appeal was not ineffective assistance of counsel because the Defendant never requested that he do so.

**B.      Ineffective Assistance of Counsel at Sentencing**

The Defendant also argues that counsel provided ineffective assistance of counsel at sentencing by failing to object to a pair of independent sentencing enhancements. First, the Defendant alleges that his trial counsel was ineffective by failing to object to the enhancement to his drug conviction sentence based on possession of the same guns that led to his conviction and

sentencing for guns and drugs violations. Second, he alleges that his trial counsel failed to object to the two-level increase for use of affection to involve another in the sale of controlled substances or for a pattern of criminal conduct as a livelihood.

At sentencing, the *Strickland* test applies to determine whether counsel was ineffective. At sentencing, counsel is ineffective if he performs in an objectively unreasonable manner. *Resnick v. United States*, 7 F.4th 611, 625 (7th Cir. 2021). "For prejudice at sentencing, the 'petitioner must show that but for counsel's errors, there is a reasonable probability that he would have received a different sentence.'" *Id.* (quoting *Griffin v. Pierce*, 622 F.3d 831, 844 (7th Cir. 2010)).

The Defendant argues that his counsel should have objected because his weapons possession was double counted both for the two-level sentencing enhancement on the drug conviction and his gun possession conviction. The Seventh Circuit has held that "the same conduct may determine the base offense level and also trigger cumulative sentencing enhancements and adjustments *unless* the test of the applicable guidelines states otherwise." *United States v. Vizcarra*, 668 F.3d 516, 525 (7th Cir. 2012). However, the Seventh Circuit has analyzed the interplay of a felon in possession and drug offenses in multiple cases. In *United States v. Sinclair*, the Seventh Circuit held that the otherwise applicable basis for grouping the drug-trafficking and § 922(g) felon-in-possession counts was not applicable because the defendant was also convicted under 18 U.S.C. § 924(c) for possession of a firearm in furtherance of a drug-trafficking crime. 770 F.3d 1148, 1157–58 (7th Cir. 2014) (citing U.S.S.G. § 2K2.4, cmt. 4). In *United States v. Bustamante*, cited by the Defendant, the district court increased defendant Pena's offense level on a conspiracy count by two levels for possessing a firearm and also sentenced him to a concurrent 120 months on a felon-in-possession count for the same

13

conduct. 493 F.3d 879, 889 (7th Cir. 2007). The Seventh Circuit held that "when a defendant is sentenced for the possession of a firearm under § 2K2.1, the district court cannot increase the defendant's sentence on another count for that same possession of a firearm." *Id.* (quoting U.S.S.G. § 2K2.4, cmt. 4). Notably, *Bustamante*, like the instant case, involved a conviction under § 922(g). *Id.*[2] The Seventh Circuit found that the district court had not grouped the counts, despite the PSIR grouping the counts, because the district court imposed separate sentences for each offense. *Id.* at 890.

It appears, considering *Bustamante*, that the Defendant's trial counsel could have argued that the two-level enhancement for possession of a dangerous weapon was erroneous. Although only one total offense level was calculated based on grouping his offenses, the Defendant was not given one sentence; he received a separate sentence for each count. However, he fails to prove ineffective assistance of counsel because he suffered no prejudice as his sentence would have been the same regardless of that two-level enhancement. Even removing those two levels, his sentence is within the guidelines. The sentencing guidelines range for the Defendant with an offense level of 39 and a criminal history category of I would have been 262 to 327 months. *See* U.S.S.G. Ch. 5, Pt. A (2016). The Defendant was sentenced to 324 months. The Court gave extensive reasons to explain the Defendant's sentence. Notably, the Court stated that it "would impose the same sentence" if any guidelines dispute "that's not raised might have been resolved differently." Therefore, the Defendant did not suffer any prejudice and he cannot meet his burden under *Strickland*.

---

[2] The Defendant in this case, like defendant Pena in *Bustamante*, was not convicted under 18 U.S.C. § 924(c) for possession of a firearm in furtherance of a drug-trafficking crime. *See Bustamante*, 493 F.3d at 881 ("All four defendants were charged with knowingly participating in a conspiracy to distribute and possess with intent to distribute cocaine, in violation of 21 U.S.C. §§ 841(a) & 846. Estremera and Pena were also charged with being felons in possession of firearms, in violation of 18 U.S.C. § 922(g) . . . .").

The Defendant's arguments that his trial counsel was ineffective for failing to object to the two-level enhancement for either using the affection of another or for drug trafficking as a livelihood is entirely without merit. The PSIR contained significant information detailing both the Defendant's significant drug trafficking operation and his wife's involvement. The Defendant was not employed when he was arrested. And, the Defendant failed to provide any evidence to contradict the PSIR's analysis of his wife's involvement. She was led into the conspiracy by him based on their relationship. The Defendant's counsel was not ineffective for failing to object to this sentencing enhancement.

## NO CERTIFICATE OF APPEALABILITY

The Court must "issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11 of the Rules Governing Section 2255 Proceedings. A certificate of appealability may be issued "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The substantial showing standard is met when "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893, 893 n.4 (1983)). The Court finds that the Defendant has failed to show that reasonable jurists could debate whether his motion presents a viable ground for relief. Therefore, the Court will not issue the Defendant a certificate of appealability.

## CONCLUSION

Based on the foregoing, the Court hereby DENIES the Defendant's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody [ECF

No. 308], and the Defendant's Motion to Hold in Abeyance a Motion to Vacate Sentence Filed

Under 28 U.S.C. § 2255 [ECF No. 318]. Further, the Court DENIES a Certificate of

Appealability.

      SO ORDERED on July 29, 2022.

                s/ Theresa L. Springmann
                JUDGE THERESA L. SPRINGMANN
                UNITED STATES DISTRICT COURT